UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                No. 1:26-cr-02-001-JMB

vs.                                  Hon. Jane M. Beckering

ROBERT ALAN MARK,

                Defendant.

## DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM

The defense submits this memorandum in response to the government's sentencing memorandum, ECF No. 41, PageID.172, and in contemplation of sentencing which is scheduled for July 28, 2026.

Several of the government's observations or arguments must be put in perspective. For example, it highlights a portion of the Presentence Investigation Report (PIR) which quotes a police report summarizing an interview with Mr. Mark, suggesting that he had a sexual interest in the minors involved. As the government notes, the PIR states that Mr. Mark said he was "curious of what sexually could have been." GOV'T SENTENCING MEMORANDUM at 2; *see* PIR ¶ 19, at 6-7.[2] The government's

---

[2]The full quote from the police report is:

> I asked Robert what type of sexual gratification he got out of taking the videos. Robert informed me it was to fill a void and be associated with it. I asked Robert to clarify, and he informed me he and his wife have had a rocky relationship and haven't had sex in years. Robert informed me he would feel like sex was still there. Robert said that he had curiosity of what sexually could have been there.

MSP Supplemental Incident Report 0001 at 4.

interpretation of the remark, however, is taken out of context.  Although the quote is an accurate quote of the *police report*, it is not what Mr. Mark actually said.  He did not say, or even suggest, that he was interested in a sexual relationship with any of those who were videotaped.  Trooper Nichols inquired what drove Mr. Mark to make the recordings, and Mr. Mark explained that because of the lack of a sex life, he took pleasure from realizing that he still had a sex drive.  And he was curious as to what could have been with his wife.  He was not, by any means expressing an interest in a sexual relationship with the girls.

The government also contends that Mr. Mark "regularly texted and interacted with girls on social media."  This, too, is overstatement.  Mr. Mark did, indeed, text with some of the troop members and communicate with them through social media.  He did not, however, do so "regularly," and it was not with "girls" in general.  He did so with troop members—boys and girls—for scouting purposes.  Aside from the one inappropriate comment on social media, there is no evidence that he used texting or social media for inappropriate purposes.

The government further contends that Mr. Mark did not "express remorse for his wrongdoing or the betrayal of trust."  GOV'T SENTENCING MEMORANDUM at 5.  Nothing could be further from the truth.  Trooper Nichols specifically asked him what the girls would think if they had known what he had done, and his answer was "betrayed."  Throughout the interview he repeatedly expressed concern for them—and the boys—while acknowledging his transgressions.  In fact, Trooper Nichols remarked in the interview that he thought that Mr. Mark was being "sincere" as he struggled to explain how he got involved in the videotaping.

This discussion concluded with Mr. Mark asking to write an apology letter, which is set forth in the presentence report.  PIR ¶ 20, at 7.  In his remarks to the probation officer, he acknowledged the same sentiment, PIR ¶ 36, at 10-11.  In his letter to this Court he repeated his feelings of remorse.  ECF No. 42-1, PageID.186. And the psychological evaluation notes that he was tearful throughout.  In fact, the evaluator concluded

> He certainly expressed regret for his actions (i.e., I wish. . .*I could redo the last few years for everyone's sake, not mine*; I failed. . .*in one part of my life and hut [sic] other I care about a lot.  I will never be the same again*; I regret. . .*the hurt I have caused others lately*).

EVALUATION at 4 (emphasis in original).  Attached as a collective exhibit are the statements of remorse Mr. Mark has made.  EXHIBIT A.  The record is replete with sincere expressions of remorse.

The government also relies upon deterrence—general and specific—to support a guidelines sentence.   ECF No. 41, GOV'T SENTENCING MEMORANDUM at 4, PageID.175.  Mr. Mark will be about 75 years old when he completes service of the mandatory minimum term of 15 years.  The defense respectfully submits that that is sufficient deterrence to him and anyone contemplating the same conduct.

Finally, included are two additional letters of support.  One from Mr. Mark's mother, Sheryl Kingery, was inadvertently omitted from those included with Mr. Mark's original submission.  The other is from a fellow scout leader, Wendy Boonstra, which not only provides some insight as to how Mr. Mark was perceived by others, but also underscores in Mr. Mark's mind just how much he betrayed so many.

V.    <u>Conclusion</u>

For the above reasons, and those previously stated, the defense respectfully requests that the Court vary downward from Total Offense Level 38, with an advisory guidelines range of 235 to 293 months, to the mandatory minimum term of 15 years' imprisonment or 180 months.

Respectfully Submitted,

WILLEY & CHAMBERLAIN LLP
Attorneys for Defendant Mark

*/s  Charles E. Chamberlain, Jr.*

Charles E. Chamberlain, Jr. (P33536)

300 Ottawa Avenue, N.W., Suite 810
Grand Rapids, Michigan 49503-2314
(616) 458-2212
cec@willeychamberlain.com

4